# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

PATRICIA K.,[1]

       Plaintiff,

    v.

NANCY A. BERRYHILL,
Deputy Commissioner for Operations,
performing the duties and functions not
reserved to the Commissioner of Social
Security,

       Defendant.

Case No. 6:17-cv-627-SI

**OPINION AND ORDER**

Katherine L. Eitenmiller and Robert A. Baron, HARDER, WELLS, BARON & MANNING, P.C., 474 Willamette Street, Suite 200, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Heather Griffith, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

**Michael H. Simon, District Judge.**

Patricia K. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). AR 15. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff protectively filed an application for DIB on June 5, 2013, alleging disability beginning January 1, 1996. AR 177. Plaintiff alleged disability due to chronic migraines, fibromyalgia, and severe depression. AR 215. She was born on January 13, 1954 and was 41 years old as of her alleged disability onset date. AR 177. The Commissioner denied her applications both initially and upon reconsideration. AR 119, 129. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 22. On September 10, 2015, an administrative hearing was held. AR 40. On September 21, 2015, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act and not entitled to DIB. AR 19-35. On November 16, 2015, Plaintiff requested a review of the ALJ decision by the Appeals Council. AR 15-18. On February 17, 2017, the Appeals Council denied her request for review, making the ALJ's decision the final decision of the Commissioner. AR 1-4. Plaintiff now seeks judicial review of that decision.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.      Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

As a preliminary matter, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2002. AR 24. Thus, Plaintiff must establish disability on or before that date in order to be entitled to DIB. AR 22. Next, the ALJ applied the sequential analysis. AR 24-34. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity from her alleged onset date through her date last insured. AR 24. At step two, the ALJ found that Plaintiff had three severe medical impairments, which more than minimally affect Plaintiff's ability to work: migraines; depressive disorder; and fibromyalgia. *Id.* The ALJ also noted that Plaintiff had a history of three non-severe medical impairments, which have no more than a minimal affect on her ability to work: intermittent hives; an abdominal hysterectomy and bilateral salpingo-oophorectomy; and an appendectomy. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of one of the listed impairments

in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 25-26.

The ALJ then evaluated Plaintiff's RFC. The ALJ determined that Plaintiff had an RFC

as follows:

> to perform less than a full range of sedentary work as defined
> in 20 C.F.R. § 404.1567(a). Specifically, the claimant can lift
> and/or carry 10 pounds occasionally and less than 10 pounds
> frequently; she can stand and/or walk for two hours out of an eight-
> hour workday with regular breaks if she is allowed to sit for 5
> minutes per hour of walking while remaining on task; she can sit
> for six hours out of an eight-hour workday with regular breaks if
> she can stand for five minutes per hour of sitting while remaining
> on task; she is unlimited with respect to pushing and/or pulling,
> other than as indicated for lifting and/or carrying. She can
> frequently climb ramps and stairs, but is precluded from climbing
> ladders, ropes or scaffolds. The claimant can occasionally stoop
> and crouch. The claimant is precluded from working at unprotected
> heights, with moving mechanical parts, or with extremes of heat
> and cold. The claimant can understand, remember and carryout
> simple and routine tasks. The claimant is limited to simple work-
> related decisions. The claimant's time off task can be
> accommodated by normal breaks.

AR 25-26.

At step four, the ALJ compared the vocational expert's testimony, the mental and

physical demands of Plaintiff's past relevant work, and the Plaintiff's RFC. Accordingly, the

ALJ determined that Plaintiff was not able to perform any past relevant work. AR 32.

At step five, the ALJ considered Plaintiff's RFC, age, education, and work experience

and determined that, based on the vocational expert's testimony, jobs existed in significant

numbers in the national economy that Plaintiff could have performed through the date last

insured. AR 33. Therefore, the ALJ determined that Plaintiff was not disabled as defined in the

Social Security Act at any time from the alleged onset date through the date last insured. AR 34.

**DISCUSSION**

Plaintiff contends that the ALJ made the following legal errors in evaluating her case: (A) improperly discrediting Plaintiff's subjective symptom testimony; (B) failing to adequately incorporate a limitation in public interaction as set forth by Richard Winslow, M.D., in the RFC and hypothetical posed to the vocational expert; (C) improperly discrediting the opinions and findings of treating physicians Kathleen Cordes, M.D. and Martin Klos, M.D.; and (D) improperly discrediting the opinions and findings of Plaintiff's therapist, Terry Fields, M.S.

**A. Plaintiff's Subjective Symptom Testimony**

**1. Legal Standards**

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 2. Analysis

The ALJ determined that Plaintiff's medically determinable impairments could be expected to cause the alleged symptoms, but not to the extent claimed by Plaintiff. AR 28. The ALJ cited two reasons for discounting Plaintiff's subjective testimony regarding her symptoms: (a) she stopped work for reasons other than disability and (b) her activities of daily living were inconsistent with her allegations that she is unable to sustain employment.

### a. Plaintiff's reasons for leaving employment

The ALJ determined that Plaintiff stopped working for reasons not related to the severity of her symptoms. The ALJ stated, "prior to alleged onset date, [Plaintiff's] Employer, EWEB had her working full time, but when her daughter was born she wanted to cut back to part time, but it didn't work out." AR 27. Plaintiff responds that this conclusion is not supported by the record and that she stopped working because of her impairments.

The ALJ's conclusion that Plaintiff wanted to cut back to part time after her daughter was born is not supported by substantial evidence in the record. Plaintiff's daughter was five months old when Plaintiff *began* working at EWEB, and although it appears Plaintiff worked part-time for some short period of time early in her career at EWEB, Plaintiff primarily worked full time at

EWEB for three years. AR 67. Plaintiff's daughter was more than three years old at the time

Plaintiff left her employment at EWEB. Thus, her departure was unrelated to the *birth* of

Plaintiff's daughter.

Plaintiff asserted in her Work History Report that she left work because of her

impairments. AR 215. Her therapist, Terry Fields, M.S., stated that she recalled Plaintiff quite

well and that Plaintiff first became a patient of Ms. Fields through EWEB's employee assistance

program when Plaintiff left work in the middle of the day sick, depressed, and throwing up at

work. AR 421. Ms. Fields further stated that during the more than two years she treated Plaintiff,

Plaintiff never went back to work.[2]

At the hearing, Plaintiff testified:

> Q: . . . You worked as an administrative assistant for EWEB from
> '94 to '97?
>
> A: Yes.
>
> Q: And why did you stop working there?
>
> A: What was gradually happening was that it was too much for me
> to do. I was trying to—I would take my daughter to day care, and
> they actually started me full-time which I had not expected which
> was a very hard—I was yanked away from my daughter for the
> first time. I got through the first couple weeks of that, and went to
> half-time. The problem with that was that I didn't know what was
> going on Wednesday afternoon when I would come in, and I was
> not—I did not have a background in utilities. I was learning things,
> and I would not know what the priorities were, the fires were to put
> out.
>
> Q: Well, ma'am, it looks like—so you worked there part-time, and
> then you were—they put you on full-time?

---

[2] Although, as discussed below, the ALJ did not err in discounting Ms. Fields' medical *opinions*, these are statements of facts that Ms. Fields states she recalls well and they are stated with specificity. These are not opinions, and thus are relevant evidence in the record regarding why Plaintiff left her employment at EWEB.

> A: Full-time, yes.
>
> Q: And then you decided to go part-time because your daughter?
> You wanted to spend more time with your daughter?
>
> A: No, sir. I was still working full-time right up to the day I left.
> They had me working a different position than I was working in
> customer service, but not as a customer service person, as a clerk.

AR 67-68. Thus, Plaintiff denied that she "decided to go part-time" because of her daughter or "wanted to spend more time with her daughter" and instead testified that she left EWEB because "it was too much for me to do." This equivocal statement is not a clear and convincing reason to discount Plaintiff's subjective testimony.

### b. Daily living activities

The ALJ determined that Plaintiff's testimony about her activity level is inconsistent with her testimony that she is unable to sustain employment. Specifically, the ALJ stated that Plaintiff "testified that prior to the date last insured the [Plaintiff] engaged in a relatively high level of activity," and "some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." AR 27.

Plaintiff testified that during the relevant time period, she planted and watered flowers once or twice a week, did some volunteer work at her daughter's school between one half hour and two hours per week, occasionally did gentle exercises in a warm pool, took her dog on walks less than 100 feet once a day, drove her daughter less than a mile to school and soccer, went grocery shopping with her husband once a week, paid bills for her grandmother as her power of attorney, and watched CNBC on TV because she was interested in the stock market. Plaintiff also testified that when her in-laws passed, she helped prepare some paperwork for their estate,

and when her grandmother moved into an assisted living facility, she moved furniture around the room. She also started an online business in 2002, but it never took off.

Plaintiff also testified, however, that her symptoms often interfered with her ability to perform these activities and otherwise function. She had some degree of a headache every day, she was completely incapacitated at least once a week from migraines, and she was "down about five days" per month. AR 80. She "would have to cancel on [her] daughter's activities sometimes [and her] doctor's appointments sometimes because [she] could not function." AR 66. In addition, one month after she attempted to start her online business, her doctor stated that Plaintiff reported she was in bed 6 to 11 hours per day. AR 65. She testified that her symptoms interfered with her ability to be a power of attorney for her grandmother. AR 83.

Plaintiff contends that although she attempted to engage in these normal activities, the activities did not consume a substantial part of Plaintiff's day. Plaintiff also asserts that she is unable to work because she cannot perform on a regular basis and at least once a week is unable to function. AR 66.

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted

that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

Plaintiff's level of activity does not contradict her alleged impairments. Her ability to walk her dog a short distance, grocery shop once in awhile, drive her daughter to school, and perform other similar activities are precisely activities the Ninth Circuit identified in *Vertigan* as insufficient to discount symptom testimony. 260 F.3d at 1050. Moreover, Plaintiff's impairments of depression and migraines are the type of impairments that can have cycles of good and bad days and times of improvements, where more activity would be expected. *See Garrison*, 759 F.3d at 1017. As such, the ALJ did not provide specific, clear, and convincing reasons to discount Plaintiff's subjective symptom testimony.

## B.  The Opinion of Richard Winslow, M.D. on Public Interaction

Several medical and non-medical sources addressed Plaintiff's mental impairments and resulting functional limitations. The ALJ awarded little weight to each of the sources' opinions

except for the opinion of Dr. Winslow, whose opinion the ALJ awarded great weight. Upon review of Plaintiff's medical records, Dr. Winslow opined that "pain may limit times of interaction with [the] public, so such times should be occasional and generally brief." AR 105. Nevertheless, the ALJ did not address Plaintiff's limitations to public interaction in the RFC. Subsequently, the vocational expert determined that someone with Plaintiff's restrictions could become an advertising material distributor or packet assembler, a clerical sorter, or an assembler of printed products.

Plaintiff argues that the ALJ erred by failing to address Plaintiff's limitations regarding public interaction in the RFC. The Commissioner responds that even if the ALJ erred, such error would be harmless because the jobs identified by the vocational expert do not involve interaction with the public.

An error is harmless if it is "inconsequential to the ultimate non-disability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *see also Robbins*, 466 F.3d at 885 (noting that an error is harmless if it is "clear from the record the error was inconsequential to the ultimate non-disability determination"). A court should not automatically reverse on account of error, but should make a determination of prejudice. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). "Determination of prejudice requires 'case-specific application of judgment, based upon examination of the record,' not 'mandatory presumptions and rigid rules.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)). These case-specific factors are "various" and potentially include, among others:

> an estimation of the likelihood that the result would have been different, an awareness of what body (jury, lower court, administrative agency) has the authority to reach that result, a consideration of the error's likely effects on the perceived fairness, integrity, or public reputation of judicial proceedings, and a hesitancy to generalize too broadly about particular kinds of errors

> when the specific factual circumstances in which the error arises
> may well make all the difference.

*Shinseki*, 556 U.S. at 411-12.

Additionally, a reviewing court can determine, based on the circumstances of the case that further administrative review is required to determine whether there was prejudice from the error. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). Mere probability of prejudice is not enough, but where there is a substantial likelihood of prejudice, then remand is appropriate. *Id.*

As discussed above, the vocational expert determined that a hypothetical person with Plaintiff's RFC could be an advertising material distributor. An advertising material distributor, however, is required to interact with the public. The DOT description of this job includes: "Distributes advertising material, such as merchandise samples, handbills, and coupons, from house to house, to business establishments, or to persons on street, following oral instructions, street maps, or address lists." DOT 230.687-010, *available at* 1991 WL 672162. This issue was also addressed in *Guembes v. Comm'r*, in which the court noted that a plaintiff limited to only occasional public contact could not work as an advertising distributor. 2017 WL 4330779, at *9 n. 2 (D. Or. Sept. 29, 2017). The court stated: "An advertiser distributor is required to distribute 'from house to house, to business establishments, or to persons on [the] street, following oral instructions.'" *Id.* (alteration in original) (quoting DOT 230.687-010).[3] Thus, the ALJ's failure to include Dr. Winslow's opinion that Plaintiff's interactions with the public should be occasional and brief was not harmless error with respect to the advertising distributor job.

---

[3] Although the court determined that the plaintiff could not perform the job of advertiser distributor because of his public interaction limitations, the court ultimately reversed and remanded on other grounds, relating to noise level limitations. The public interaction finding was an alternative finding.

Regarding the job of an assembler of printed products, the DOT's occupational requirements describe the requirements of this position as:

> [a]ssembles and folds printed sheets or cards into various shapes or designs. Attaches seals, lace, sachet bags, ribbon, or other paper or metallic inserts on specified products, using glue, plastic tape, or staples. Applies glue to folded edges of product with brush. Glues and inserts sheets on specified products by machine. Examines finished products for defects. May trim products to specified size, using trimming machine. May insert envelope into fold of card. May box and wrap cards and other products.

DOT 209.687-022, *available at* 1991 WL 671812. This does not indicate interaction with the public. Additionally, courts have affirmed ALJ conclusions that a person limited to occasional public interactions can work as an assembler of printed products. *See, e.g.*, *Hunter v. Comm'r*, 651 F. App'x 958, 960 (11th Cir. 2016) (affirming ALJ's decision that a plaintiff can perform work as an assembler of printed products despite her doctor's opinion that her public interaction should be limited).

Similarly, a clerical sorter is not required to significantly interact with the public. Rather, under the DOT's occupational requirements, a clerical sorter

> [s]orts data, such as forms, correspondence, checks, receipts, bills, and sales tickets, into specified sequence or grouping, such as by address, code, quantity, and class, for such purposes as filing, mailing, copying, or preparing records.

DOT 529.687-186, *available at* 1991 WL 674781. Courts have also found this position does not require much public interaction and have affirmed ALJ findings that persons limited to occasional public interactions can perform this job. For example, in *Richard v. Colvin*, the plaintiff's RFC limited her to only occasional contact with the general public. 2013 WL 4522082, at *4 (W.D. Wash. Aug. 27, 2013). The court found that, based on the DOT description, the job of clerical sorter did not involve "significant interaction or contact with the public." *Id.* at *10. The court affirmed the ALJ's determination that the plaintiff was not disabled

and could perform the job of clerical sorter. *Id.* at *11. In addition, although the court did not discuss the level of public interaction required by the clerical sorter position, in *Jones v. Commisioner*, the ALJ found that the plaintiff could work as a clerical sorter despite an RFC that limited the plaintiff to "only brief, infrequent, and superficial contact with the public." 2015 WL 12696225, at *4 (E.D. Mich. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 47968 (E.D. Mich. Jan. 5, 2016). Accordingly, the court affirmed the ALJ's finding of non disability. Similarly, Plaintiff's limitations regarding interaction with the public do not prevent her from working as a clerical sorter.

Therefore, even assuming the ALJ erred by failing to include Dr. Winslow's limitations regarding public interaction, Plaintiff could still perform the duties required of an assembler of printed products and a clerical sorter. As stated above, the ALJ's error is harmless if it is clear from the record the error was "inconsequential to the ultimate non-disability determination." *Molina*, 674 F.3d at 1115. Because Plaintiff could still perform two of the three jobs despite the ALJ's alleged error, Plaintiff has not met her burden to show the substantial likelihood of prejudice, and the ALJ's error is harmless.

## C. Medical Opinion Evidence

### 1. Legal Standards

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by

medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, non-treating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at

1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison¸* 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286 (noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

### 2. The Opinion of Kathleen Cordes, M.D.

Plaintiff contends that the ALJ improperly assigned controlling weight to the medical opinions of the reviewing state agency physicians, Dr. Winslow and Dr. Roy Brown, instead of the medical opinion of Plaintiff's treating and primary care physician, Dr. Cordes. Further, Plaintiff contends that the ALJ did not provide a sufficient explanation supported by substantial evidence for this decision.

In December 2014, Dr. Cordes completed a Fibromyalgia Residual Functional Capacity Assessment form. AR 414-20. It is primarily a checkbox form, although there are areas for

additional commentary. Dr. Cordes checked the box "yes" indicating that Plaintiff met the criteria for fibromyalgia before 2002. AR 414. In response to the section requesting identification of clinical findings supporting the fibromyalgia diagnoses, Dr. Cordes stated that Plaintiff had multiple tender points, muscle tenderness in all limbs, and pain in her lower back. *Id.* Dr. Cordes also included information regarding Plaintiff's headaches on this form and opined regarding Plaintiff's exertional limitations.

The ALJ gave little weight to this assessment by Dr. Cordes. The ALJ gave numerous reasons to discount Dr. Cordes's report. The ALJ noted that the diagnoses of fibromyalgia before 2002 was a checkbox "yes"; that in Plaintiff's treatment notes, Dr. Cordes never mentioned fibromyalgia, let alone diagnosed it before 2002; that although Dr. Cordes mentioned that Plaintiff has 12 tender points Dr. Cordes never tested them in the medical evidence of record; that Dr. Cordes described extensive pain that was not supported in the objective medical evidence of record; that Dr. Cordes described limitations due to extreme pain that were contradicted by Plaintiff's daily activities during the relevant time period; that Dr. Cordes did not provide adequate explanation or support for her findings; and that Dr. Cordes's 2014 report generally does not incorporate and is inconsistent with Dr. Cordes's contemporaneous treatment notes.

An ALJ may discredit a treating physician's opinion if it is inconsistent with the doctor's own notes. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Rollins*, 261 F.3d at 856. An ALJ may also discount a treating physician's opinion if it is inconsistent with the medical record, the plaintiff's activities of daily living, or is brief, conclusory, or inadequately supported by medical findings. *Tommasetti*, 533 F.3d at 1041; *Andrews*, 53 F.3d at 1042-43. Furthermore, although check-box forms that are "supported by numerous records" are entitled to weight,

where the check-box form is not supported by underlying records and does not itself contain sufficient rationale, it is not entitled to weight. *Garrison*, 759 F.3d at 1013.

Plaintiff asserts that treating physician Dr. Cordes's 2014 fibromyalgia assessment is consistent with treatment notes because Dr. Cordes mentioned "possible fibromyalgia" in a 1998 note. AR 375. That notation, however, is in the subjective assessment section of Dr. Cordes's notes, which essentially transcribes Plaintiff's subjective descriptions of her own complaints. Other than this single notation based on Plaintiff's subjective statement in 1998, Dr. Cordes made no further comment specifically regarding fibromyalgia until after Plaintiff's date last insured. Nor did Dr. Cordes make any *diagnosis* of fibromyalgia in her contemporaneous treatment notes during the relevant time period. Thus, the portion of Dr. Cordes's 2014 assessment that outlined Plaintiff's fibromyalgia diagnosis is unsupported by her treatment notes from the relevant time period and was inadequately supported in the report.

Regarding Plaintiff's daily activities, Plaintiff argues that the ALJ failed to account for the frequency and severity of Plaintiff's limitations described in Dr. Cordes's treatment notes. For example, in a January 1999 treatment note Dr. Cordes opined that although Plaintiff was swimming, she had persistent headaches and back pain. AR 367. In a May 1999 treatment note, Dr. Cordes opined that although Plaintiff had been gardening, it caused her upper back and neck pain, for which she took OxyContin. AR 363. In February 2000, Dr. Cordes noted that Plaintiff was functioning "fairly well" with pain levels averaging seven out of ten, with a low of five and a high of nine, but was taking naps one-to-three times per week to function at that level. AR 354. In January 2001, Dr. Cordes noted that although Plaintiff volunteered at her daughter's school, her pain levels were between a six and seven in the morning upon waking and eight to nine on a "bad day," which resulted in minimal activity. AR 346. Dr. Cordes also noted that Plaintiff stated

her pain level is nine out of ten at some point every day. *Id.* In December 2001, Dr. Cordes noted that Plaintiff stated she "was down" five days in November, which was the same month that she helped her grandmother move to a nursing home (a fact noted by the ALJ as an activity inconsistent with Dr. Cordes's medical opinions). AR 339.

The ALJ must consider the evidence as a whole in arriving at a conclusion based upon substantial evidence. *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001). The ALJ's conclusion that "Dr. Cordes's 2014 assessment and memory does not accurately portray, incorporate, or reflect the claimant's abilities and activities of daily living" is not supported by substantial evidence in the record. AR 31. Dr. Cordes's treatment notes are consistent with Plaintiff's testimony regarding her daily living activities, as discussed in Section A.2.b above. Although Plaintiff attempted to engage in normal activities as much as possible, she was significantly limited in her ability to do so. Further, Plaintiff's conditions are cyclical and would allow for some activity, with more activities on "good" days. Inconsistency with Plaintiff's activities, therefore, was not a specific and legitimate reason to discount Dr. Cordes's medical opinions. Nor was Plaintiff's "extreme pain" inconsistent with Dr. Cordes's treatment notes. Her treatment notes consistently contain reports by Plaintiff of high levels of pain.

In addition, a checkbox form such as the 2014 Fibromyalgia Assessment Form is entitled to great weight if it is "supported by numerous records." *Garrison*, 759 F.3d at 1013. If however, the form is not supported by underlying records and does not itself contain sufficient rationale, it is not entitled to weight. *Id.* Here, as mentioned above, Dr. Cordes did not explicitly mention fibromyalgia before 2002, nor did she officially diagnose it in Plaintiff's treatment notes before 2002. Therefore, that portion of the form is unsupported by underlying records. Other than this single checked box, however, the remaining five pages of the assessment are consistent with

underlying records and supported by sufficient rationale on the form itself. Dr. Cordes's descriptions on the assessment form to support various checked boxes include written descriptions of Plaintiff's stamina, severity of pain, stress pain levels, side effects from medication, fatigue, pace, symptoms, factors that aggravated symptoms, and ability to tolerate work. The vast majority of this detailed assessment is consistent with Plaintiff's medical records as a whole, including Dr. Cordes's treatment notes throughout her treatment relationship with Plaintiff. Usage of the checkbox form, therefore, is not a specific and legitimate reason to discount Dr. Cordes's medical opinions.

The ALJ also rejected Dr. Cordes's medical opinion because she opined in the 2014 assessment that Plaintiff had 12 tender points, yet Dr. Cordes never tested them in the medical evidence of record. As Plaintiff's primary care physician, however, Dr. Cordes conducted overall health examinations for Plaintiff, such as women's annual exams, prescribed common medications for her overall health such as Zantac (for heartburn) and Allegra (for allergies), treated her for common illnesses such as a sore throat and strep throat, and treated her injured fifth finger and rolled ankle. Where appropriate, Dr. Cordes referred Plaintiff to outside specialists and communicated with them about Plaintiff's prognosis. Rather than test the tender points herself, Dr. Cordes referred Plaintiff to Dr. Klos, who in July 2000 assessed Plaintiff's tender points and pain levels. Because Dr. Klos specifically assessed Plaintiff's tender points and Dr. Cordes conferred with Dr. Klos regarding Plaintiff's prognosis, it was not necessary for Dr. Cordes to duplicate Dr. Klos's work to reassess Plaintiff's tender points. Further, although Dr. Cordes did not specifically test the tender points, she refers to treating "trigger points" and considered "physical therapy and/or trigger point injections." AR 355.

There is, however, an inconsistency between Dr. Cordes's 2014 assessment and Dr. Klos's July 2000 assessment: Dr. Cordes stated that Plaintiff had 12 tender points, while Dr. Klos assessed 16 tender points. Although the specified amount of tender points is inconsistent, the presence of multiple tender points is supported. It is also supported by additional evidence in the record. For example, state reviewing physician, Dr. Brown, whose opinion the ALJ awarded great weight, opined that Plaintiff had "multiple tender points." AR 100. In addition, Dr. Klos noted "mild throbbing pain, gnawing pain, *tender* pain, and numbing pain" 13 times throughout the record (emphasis added). Finally, Plaintiff testified that "the doctor said, well, let's try the pressure point test to see if you have fibromyalgia and she did that, and she found that there were a lot of tenderness in the points that she—so I remember the pain." AR 46.

Although Dr. Cordes's 2014 specific fibromyalgia diagnosis as being before 2002 is inadequately supported by her treatment notes the diagnosis was supported by Dr. Klos's report and other evidence. Further, the remaining reasons that the ALJ awarded controlling weight to the medical opinions of the reviewing state agency physicians are not specific or legitimate. This single inconsistency is not a sufficient reason to discount the entirety of Dr. Cordes's detailed treatment notes and opinions in favor of two reviewing state agency physicians, particularly because Dr. Cordes is Plaintiff's long time treating physician.

### 3. The Opinion of Martin Klos, M.D.

The ALJ awarded little weight to the opinions and findings of Dr. Klos because "Dr. Klos only treated the claimant in 2014 and 2015 and had no interaction with the claimant during the period of 1997 through 2002." AR 31. Dr. Klos, however, examined Plaintiff in July 2000 and issued a report of his findings. AR 266-72. Notably, in discussing Plaintiff's medical history, the

ALJ discussed this examination and report. But in evaluating Dr. Klos's medical opinion, the ALJ appears to have overlooked this July 2000 examination.

Plaintiff identifies that in the July 2000 examination, Dr. Klos assessed Plaintiff's tender points at the referral of her treating physician at the time, Dr. Cordes. AR 271. In that opinion, Dr. Klos determined that Plaintiff's "tender point examination was positive for pain" in sixteen points. Further, Dr. Klos opined that he was concerned with Plaintiff's "probable disc injury to the neck along with a severe myofascial pain syndrome. . . . Based on my examination I feel that she has headaches due to nerve injury, and we currently have no capability in this community to approach this type of injury." *Id.*

The Commissioner argues that Plaintiff fails to demonstrate how the ALJ's error in overlooking Dr. Klos's 2000 examination and report is harmful. Specifically, the Commissioner asserts that Plaintiff fails to identify any limitations to which Dr. Klos opines that are not included in Plaintiff's RFC.

The party claiming error has the burden "to demonstrate not only the error, but also that it affected his [or her] 'substantial rights,' which is to say, not merely his [or her] procedural rights." *Ludwig*, 681 F.3d at 1053. To satisfy her burden, Plaintiff must identify that there is a substantial likelihood of prejudice that results from excluding Dr. Klos's opinion. Plaintiff has not identified any specific limitations that Dr. Klos opined to that are not included in the RFC.

Regardless of whether Plaintiff has satisfied her burden, a reviewing court can determine, based on the circumstances of the case, that further administrative review is required to determine whether there was prejudice from the error. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). Here, if the ALJ had accounted for Dr. Klos's July 2000 opinion, including Plaintiff's sixteen tender points, there is a substantial likelihood Plaintiff's RFC would have been different,

specifically regarding her physical limitations including her ability to lift and carry weight, stand,

walk, and sit. Moreover, the ALJ may have evaluated Dr. Cordes's opinion differently,

specifically regarding her opinion that Plaintiff suffered from fibromyalgia before 2002. Thus,

the prejudice is not necessarily limited only to additional limitations in the RFC from Dr. Klos,

as argued by the Commissioner. Considering the relevant factors at hand, there is a substantial

likelihood of prejudice resulting from the ALJ's failure to consider Dr. Klos's July 2000 report.

### D. Opinion Evidence of Terry Fields, M.S.

#### 1. Legal Standards

Social Security Rule ("SSR") 06-03p[4] in effect at the time Plaintiff filed her claim

defined "acceptable medical sources" as licensed physicians, licensed or certified psychologists,

licensed optometrists, licensed podiatrists, and qualified speech pathologists. SSR 06-03p,

*available at* 2006 WL at 2329939 (Aug. 9, 2006). Health care providers who are not "acceptable

medical sources," such as "nurse practitioners, physician's assistants, chiropractors, audiologists,

and therapists," are still considered "medical sources" under the regulations, and the ALJ can use

these other medical source opinions in determining the "severity of [the individual's]

impairment(s) and how it affects [the individual's] ability to work." 20 C.F.R. § 404.1513(d). An

"other" medical source may not, however, provide medical opinions or be given "controlling"

weight as a treating medical source. *See* SSR 06-03p. Because Ms. Fields is a licensed social

worker, she is considered an "other" medical source.

---

[4] For claims filed on or after March 27, 2017, the Commissioner has rescinded SSR-06-03p, broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants for impairments within their licensed scope of practice, and clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medial opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263.

An ALJ may not reject the competent testimony of "other" medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). In rejecting such testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id*. at 1114. The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). Where an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of the claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

In considering how much weight to give "other" medical source opinion evidence, the ALJ should consider: (1) "how long the source has known and how frequently the source has seen the individual"; (2) "how consistent the opinion is with other evidence"; (3) "the degree to which the source presents relevant evidence to support an opinion"; (4) "how well the source explains the opinion"; (5) "whether the source has a specialty or are of expertise related to the individual's impairment(s)"; and (6) "any other factors that tend to support or refute the opinion." SSR 06-03p. The fact that a source is an "acceptable medical source" sometimes entitles that source's opinions to more weight than the opinions from other medical sources. *Id.* Nonetheless, in certain instances, after applying the factors for weighing opinion evidence, and ALJ may properly find that an opinion from a medical source who is not an "acceptable medical source" outweighs the opinion of the "acceptable medical source":

> For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion. [5]

*Id.* Lay witness testimony regarding the severity of a Plaintiff's symptoms or how impairments affect a Plaintiff's ability to work is competent evidence that an ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993)). "Depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an acceptable medical source may outweigh the opinion of an acceptable medical source, including the medical opinion of a treating source." SSR 06-03p, at *5 (internal quotations omitted).

---

[5] Giving more weight to the opinion of a non-acceptable medical source over a treating medical source does not violate the treating source rules under 20 C.F.R. § 404.1527(d)(2).

## 2. Analysis

Ms. Fields provided therapy to Plaintiff two-to-four times per month beginning in 1997 for about two and one-half years. AR 421. Although Ms. Fields prepared treatment notes during Plaintiff's treatment, by the time Plaintiff applied for DIB, Ms. Fields no longer had those records. *Id.* Accordingly, approximately 15 years after the treatment relationship ended, Ms. Fields provided a one page letter, which outlines her recollection of Plaintiff's treatment. *Id.* Ms. Fields noted that she recalled Plaintiff well, despite not having treatment notes. *Id.* Ms. Fields stated that Plaintiff presented with depression and anxiety, experienced chronic headaches, and during the time Ms. Fields' treated Plaintiff, Plaintiff was diagnosed with fibromyalgia. *Id.* Ms. Fields further noted that she recalled that Plaintiff had to cancel appointments due to her headaches, she was "hard on herself" for being unemployed, and that Ms. Fields encouraged Plaintiff to apply for disability because Ms. Fields did not see Plaintiff being able to return to work for "the foreseeable future." *Id.* Plaintiff did want to apply for disability at that time.

The ALJ awarded little weight to the findings and opinions of Ms. Fields. AR 31. The ALJ found the letter to be vague, conclusory and unsupported by any treatment records. *Id.* In addition, the ALJ reasoned that although there is a mention of fibromyalgia in Ms. Fields's letter, there is no diagnosis in the medical evidence of record prior to the date last insured; thus, that particular statement is unsupported by objective medical evidence. *Id.*

Plaintiff argues that although the treatment records no longer exist, Ms. Fields specifically stated that she remembered Plaintiff well, including "the issues that she presented with during the time." AR 421. In addition, Plaintiff asserts that because Ms. Fields provided "detailed and specific professional observations from the relevant period," the ALJ's statement that Ms. Fields's opinion is conclusory and lacks specificity is "simply unsupported by the

evidence." Finally, Plaintiff contends that because there is no fibromyalgia diagnosis in the record prior to the date last insured, Ms. Fields' opinion is properly discounted. Specifically, Plaintiff argues that because Ms. Fields did not opine that fibromyalgia was Plaintiff's impairment and instead opined that Plaintiff was "unable to work due to chronic debilitating headaches and depression," the ALJ's reliance on a fibromyalgia diagnosis is unfounded.

Although Ms. Fields stated that she remembered Plaintiff and her issues well, her opinion letter is general and conclusory—essentially stating that Plaintiff had depression, anxiety, and headaches. Ms. Fields did not support any of her conclusions regarding Plaintiff's conditions with anything other than vague descriptions of Plaintiff's subjective complaints. For example, Ms. Fields stated that Plaintiff "presented with" depression and anxiety, but she did not specifically outline any of Plaintiff's symptoms, describe any testing Ms. Fields may have done, or explain her reasoning for why she reached the diagnosis of depression and anxiety. Therefore, the ALJ provided reasons germane to Ms. Fields to discount her conclusions.

## E. Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly

rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The United States Court of Appeals for the Ninth Circuit articulates the rule as follows:

> The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual matters have been resolved. In conducting this review, the district court must consider whether there are inconsistencies between the claimant's testimony and the medical evidence in the record, or whether the government has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.

> If the district court does determine that the record has been fully developed and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. Said otherwise, the district court must consider the testimony or opinion that the ALJ improperly rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true. If so, the district court may exercise its discretion to remand the case for an award of benefits. A district court is generally not required to exercise such discretion, however. District courts retain flexibility in determining the appropriate remedy and a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony.

*Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (citations and quotation marks omitted).

Here, the ALJ did not provide sufficient reasons for discounting Plaintiff's subjective symptom testimony, Dr. Cordes's medical opinion, and Dr. Klos's medical opinion. The record is not, however, free from all conflicts and ambiguities. Thus, the matter is remanded for further proceedings.

## CONCLUSION

The Commissioner's decision is not based on proper legal standards or supported by substantial evidence. Therefore, Plaintiff's request for remand is GRANTED. The Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

**IT IS SO ORDERED**.

DATED this 7th day of August, 2018.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge